RECEIVED
IN LAKE CHARLES, LA.

MAY - 2 2013

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CARL BOYD | : | CIVIL ACTION NO. 2:10-cv-1463 |
| VS. | : | JUDGE PATRICIA MINALDI |
| CALCASIEU PARISH SHERIFF'S OFFICE | : | MAG. JUDGE KATHLEEN KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 25] filed by the defendant, Calcasieu Parish Sheriff's Office ("Calcasieu"). The plaintiff, Carl Boyd, did not file a response.[1] For the reasons stated herein, Calcasieu's motion will be GRANTED.

## FACTS

In this case, the plaintiff asserts that several Calcasieu Parish police officers used excessive force in breaking up a fight between himself and Justin Bravo, and then engaged in a conspiracy to cover up the incident.[2] He claims relief for violations of the Fourth and Fourteenth Amendments under 42 U.S.C. §§ 1983, 1985, and 1988, and also asserts state battery and negligence claims.[3] The plaintiff also alleges that Sheriff Tony Mancuso, the deputies' supervisor, failed to properly train and/or supervise the deputies who injured him; failed to have

---

[1] The court notes that, after Calcasieu filed this motion, Boyd's counsel filed a Motion to Withdraw. [Doc. 35]. After conferring with Magistrate Judge Kay, it was decided that Boyd's counsel would be allowed to withdraw, and, after requesting an extension, he was given until April 26, 2013, to retain new counsel. [Doc. 45]. The court abstained from deciding this motion in the interim, on the chance that Boyd would retain new counsel who would file an out-of-time opposition to the pending Motion for Summary Judgment.  As this deadline has passed and Boyd has not retained new counsel, however, this motion is now ripe for review.

[2] Pl's Compl., [Doc 1].

[3] See generally id.

1

proper and safe regulations in place; and instead created policies, customs, and usages that contributed to the plaintiff's alleged injuries.[4]

The relevant uncontested facts are as follows: On September 26, 2009, Corporal Joshua Couch and Deputy Joshua Lewis of the Calcasieu Parish Sheriff's Office were dispatched to the Tobacco Plus Store at 2217 Highway 90 in response to a disturbance.[5]  Upon arrival, the two deputies noticed that the plaintiff and Bravo (an acquaintance of the plaintiff) were fighting in the backseat of a vehicle.[6]  In the course of trying to break up the fight, the plaintiff alleges that the deputies used excessive force.[7]  The deputies aver that they had to make a quick decision in separating two individuals who were drunk and refused to stop fighting each other.[8]

At the time of the altercation, Calcasieu had no policies or procedures in place that allowed the use of excessive force, racial profiling, unlawful arrests, or that allowed failure to adhere to the reasonableness standard afforded by the Fourth Amendment.[9]  Further, all deputies employed by Calcasieu, including Corporal Joshua Couch and Deputy Joseph Lewis, were trained regularly on recent developments in the law, and were required to successfully complete basic training from an accepted law enforcement academy.[10]

## LEGAL STANDARDS

## I.    SUMMARY JUDGMENT STANDARD

---

[4] *Id.* at ¶¶ 35 – 36.

[5] Def.'s Statement of Uncontested Material Facts to Mot. for Summ. J., [Doc. 25-1], at ¶ 1.

[6] *Id.* at ¶ 4.

[7] *Id.* at ¶ 2.

[8] *Id.* at ¶ 4.

[9] *Id.* at ¶ 5.

[10] *Id.* at ¶ 6.

2

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party…" *Id.*

## II.   EFFECT OF NON-MOVANT NOT FILING SUMMARY JUDGMENT RESPONSE

The Western District of Louisiana's Local Rule 56.2 requires a party's opposition to a motion for summary judgment to include a "separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR56.2  Additionally, "[a]ll material facts set forth in the statement required to be served by the moving party will be admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*  As the plaintiff has

3

failed to file a response to Calcasieu's motion for summary judgment at all, all material facts set forth in its statement of material facts are deemed admitted.

## LAW & ANALYSIS

### I.   EXCESSIVE FORCE

Boyd alleges that the deputies intentionally slammed him to the ground in a careless and grossly negligent manner, using more force than was required.[11] As a result, Boyd's head struck the raised portion of concrete which allegedly caused him bodily harm, including a laceration above his eyebrow, internal bleeding, a blood clot, and a massive stroke which resulted in paralysis of the left side of Boyd's body.[12]

#### A.  The Deputies Used Objectively Reasonable Force

To succeed in a 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment, a plaintiff must show that: (1) he suffered an injury; (2) the injury resulted directly and only from the use of force that was excessive, and (3) such force was objectively unreasonable. *Flores v. City of Palacios*, 381 F. 3d 391, 396 (5th Cir.2004).  As explained by the Supreme Court in the case *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989),

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. *Id.,* at 8, 105 S.Ct., at 1699, quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See *Terry v. Ohio,* 392 U.S., at 22–27, 88 S.Ct., at 1880–1883. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires

---

[11] [Doc. 1] at ¶ 25.

[12] *Id.* at ¶ 26.

4

careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee v. Garner,* 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry v. Ohio, supra,* 392 U.S., at 20–22, 88 S.Ct., at 1879–1881. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick,* 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott v. United States,* 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168 (1978); *see also Terry v. Ohio, supra,* 392 U.S., at 21, 88 S.Ct., at 1879 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *See Scott v. United States, supra,* 436 U.S., at 138, 98 S.Ct., at 1723, citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

*Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871 – 72 (1989).

After considering all the evidence on the record, this court finds that the deputies used a reasonable amount of force under the circumstances. The deputies were called to the scene of the incident to find two men fighting inside a car.[13] The record shows that the deputies and other individuals repeatedly asked Boyd to step out of the car; however, Boyd did not show any signs

---

[13] Aff. of Joseph Lewis, Ex. 1 to Defs.' Mot. for Summ. J., [Doc. 25-4], at ¶ 3; Aff. of Joshua Couch, Ex. 2 to Defs.' Mot. for Summ. J., [Doc. 25-5], at ¶ 3.

of complying with their orders.[14]  Further, because Boyd was visibly intoxicated, this entitled the

deputies to be more alert and cautious.[15]  If the deputies did not intervene and subdue Boyd, he

posed a serious risk to public safety as evidenced by his attempt to choke Bravo.[16]  A reasonable

officer in such a circumstance could have thought that physically forcing Boyd to the ground was

justified in order to protect Bravo, the deputies, the general public, and Boyd himself.  *See Fils v.*

*City of Aventura*, 647 F.3d 1272, 1290 – 91 (11th Cir. 2011) (holding police officer did not use

excessive when they tackled the plaintiff after she refused to stop moving after the police officer

instructed her to do so); *see also Therrien v. Town of Jay*, 483 F. Supp. 2d 19, 26 – 27 (D. Me.

2007) (holding the officer did not use excessive force in quickly and forcefully taking the

intoxicated plaintiff down to the ground); *Garcia v. Greco*, 05 CIV 9587, no. 2010 WL 446446

at *7 (S.D.N.Y., Feb. 9, 2010) (holding that the officers acted reasonably when they tackled the

plaintiff to the ground and repeatedly used force to keep him on the ground after the plaintiff

refused to comply with the officers orders).

Further, the court may consider the severity of the injuries alleged to determine "whether

the use of force could plausibly have been thought necessary." *Brown v. Lippard*, 472 F.3d 384,

386-87 (5th Cir. 2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  In his complaint,

Boyd asserts that the deputies caused several injuries that required extensive medical treatment.

Boyd has not, however, provided the court with any evidence of medical records, records of

doctors' visits, or proof of any serious injury. In the absence of any competent summary

judgment evidence on this issue, the court cannot consider the severity of the injuries as a means

to determine the reasonableness of the force used by the deputies.

---

[14] *Id.*

[15] Couch Aff., [Doc. 25-4] at ¶ 4; Lewis Aff., [Doc. 25-5] at ¶ 4.

[16] Couch Aff., [Doc. 25-4] at ¶ 5; Lewis Aff., [Doc. 25-5] at ¶ 5.

6

### B.  Boyd's Excessive Force Claim Barred by Qualified Immunity

Corporal Couch and Deputy Lewis have asserted a qualified immunity defense against Boyd's excessive force claim. "A qualified immunity defense 'serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's act were objectively reasonable in light of then clearly established law.'" *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir.2005).  Qualified immunity functions to preserve two important interests: "the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  If reasonable public officials could differ on the lawfulness of the defendants' actions, the defendant is still entitled to qualified immunity.  *Malley v.* Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed. 271 (1986).  Thus, even when a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.  *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must satisfy a two-prong test. *Atteberry*, 430 F.3d at 253.  First, the plaintiff must claim that the defendants committed a constitutional violation under current law. *Id.*  Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  *Id.* Boyd has failed to provide any evidence which shows that the deputies' actions were objectively unreasonable in light of clearly established law at the time. Accordingly, Boyd's excessive force claim will be dismissed.

## II.    SUPERVISORY LIABILITY

Boyd further alleges that Sherriff Mancuso is liable personally and in his official capacity for violating his Fourth and Fourteenth amendment rights.

### A. Sherriff Mancuso is not Liable Under *Respondeat Superior*

A supervisory official cannot be held vicariously liable for the actions of subordinate under 42 U.S.C. § 1983; *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir.2005). Rather, a supervisory official may be held liable only if the plaintiff demonstrated that the official was personally involved in the constitutional violation or demonstrated a causal link between the official's action and the alleged deprivation. *Id.* Boyd has not alleged that Sherriff Mancuso was directly involved in the incident. Accordingly, Calcasieu is entitled to summary judgment dismissing Boyd's personal liability claims against him.

### B. Sherriff Mancuso is not Liable in his Official Capacity

Moreover, Boyd has failed to produce evidence showing that Sherriff Mancuso caused the injuries by failing to adopt policies to prevent the use of excessive force. A plaintiff seeking recovery under a failure to train or supervise rationale must prove that the supervising officer failed to control an officer's "known propensity for the improper use of force." *See, e.g., Sims v. Adams*, 537 F.2d 829, 832 (5th Cir.1976); *Chestnut v. City of Quincy*, 513 F.2d 91, 92 (5th Cir.1975). Further, the plaintiff must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003) (internal citations and quotations omitted).

Boyd only offers conclusory allegations regarding inadequate training and supervision of the deputies involved in the arrest, but has produced no evidence to substantiate these allegations. Therefore, Boyd cannot establish that Sherriff Mancuso was responsible for Boyd's

injuries as a result of failure to train or supervise. *See id.* Accordingly, Boyd's official capacity claim against Sheriff Mancuso will be dismissed.

## III.   CONSPIRACY

Boyd next claims under 42 U.S.C § 1985(3) that the deputies engaged in a conspiracy to write a false police report and inadequately block Boyd's right to receive medical treatment.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir.1987) (citing *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828–29, (1983)).

Boyd cannot state a claim for conspiracy because, as a matter of law, a conspiracy requires two or more persons or entities. *Suttles v. U.S. Postal Service*, 927 F.Supp. 990, 995-1002 (S.D.Tex.1996). The intracorporate conspiracy doctrine states that a corporation cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment. *Id.* The intracorporate conspiracy doctrine is also applicable to governmental entities. *Hilliard v. Ferguson*, 30 F.3d 649, 652 – 53 (5th Cir. 1994) (applying intracorporate conspiracy doctrine to bar § 1985 claim against public school board and its officials). Boyd is alleging that the deputies conspired with each other to deprive Boyd of his constitutional rights. It is evident from the facts that the deputies were on duty and were engaged in performing a task that was within the scope of their employment. Therefore, Boyd's claim is barred due to the intracorporate conspiracy doctrine.

Additionally, to assert a claim for conspiracy under § 1985, the plaintiff must also show that the conspiracy was motivated by a class-based animus. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994). Boyd has not alleged any class-based animus. Accordingly, Boyd's conspiracy claim will be dismissed.[17]

## IV.   STATE LAW CLAIMS

Finally, Boyd asserts Louisiana state law claims on the theories of battery and negligent hiring, training, supervision and retention. This court has subject matter jurisdiction over Boyd's state claims pursuant to 28 U.S.C § 1367, which grants federal courts supplemental jurisdiction over state claims that are related to one or more federal claims brought by the plaintiff as to form part of the same case or controversy. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Because Boyd's federal claims will be dismissed, it is appropriate for this court to decline to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating 'the district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." The Fifth Circuit has consistently held that "when a court dismisses all federal claims before trial, the general rule is to dismiss pendent claims." *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir.1999). Accordingly, this court will decline to exercise jurisdiction over Boyd's state law claims and will dismiss them without prejudice.

## CONCLUSION

For the reasons stated herein, Calcasieu's Motion for Summary Judgment will be granted. Boyd's §§ 1983, 1985, and 1988 claims will be dismissed with prejudice, and his state law

---

[17] As Boyd's §§1983 and 1985 claims are dismissed, the court finds that his attorney's fees claim under 42 U.S.C. § 1988 is moot.

claims, which the court declines to exercise supplemental jurisdiction over, will be dismissed without prejudice.

Lake Charles, Louisiana, this ___1___ day of ___May___ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE